**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **M.D. WADID YOUSSEF ZAKY SALAMA,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-25-3262** |
| **CHRISTOPHER J. GALUARDI, MD,** | * | |
| **Defendant.** | * | |

**MEMORANDUM OPINION**

On October 2, 2025, Plaintiff Wadid Youssef Zaky Salama, MD, initiated this action against Defendant Christopher J. Galuardi, MD, alleging five counts of defamation.[1] ECF No. 1. On May 8, 2026, the Court dismissed the Complaint for failure to state claim. ECF Nos. 19–20; *Salama* v. *Galuardi*, Civil Action No. EA-25-3262, 2026 WL 1279070 (D. Md. May 8, 2026); Fed. R. Civ. P. 12(b)(6). Dr. Zaky Salama subsequently filed an Amended Complaint in which he alleges four counts of defamation. ECF No. 23. Pending before the Court is Dr. Galuardi's second motion to dismiss, or in the alternative, for summary judgment, which is fully briefed. ECF Nos. 26, 29, 33. No hearing is necessary. Local Rule 105.6 (D. Md. Dec. 1, 2025). For the reasons set forth below, the motion, construed as a motion to dismiss, is granted.

## I. BACKGROUND[2]

Dr. Zaky Salama and Dr. Galuardi are physicians who practiced at KNJ Properties LLC (doing business as Delmarva Spine and Pain) (KNJ) and at Jessco, LLC (doing business as the Ambulatory Surgery Center). ECF No. 23 ¶¶ 5–6. On or about October 4, 2024, between

---

[1] This case was referred to a United States Magistrate Judge with the parties' consent. ECF Nos. 4, 6, 11–12; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).

[2] This factual summary is drawn from the allegations in the Amended Complaint (ECF No. 23), which are accepted as true for the purposes of this motion. *E.I. du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

approximately 8:15 to 8:30 am, Dr. Galuardi told Julie Dalee, a "front desk worker" at KNJ, that Dr. Zaky Salama had committed Medicare fraud and was no longer with the practice. *Id.* at ¶¶ 26, 30, 37. That same day, Angela Davis, a social worker at KNJ, arrived at work and "could not move past the patient waiting room, as her passcode had been changed." *Id.* at ¶¶ 10, 12–13, 21. Soon thereafter, at approximately 8:45 to 9:00 am, Dr. Galuardi took Ms. Davis "into an empty examination room medical office" and told her that Dr. Zaky Salama "had committed Medicare fraud and was removed from the practice." *Id.* at ¶¶ 14–15.

On November 15, 2024, Deanna Bradford, a former KNJ patient, went to Dr. Zaky Salama's office "to determine if [he] could treat her." *Id.* at ¶ 45. During this visit, Ms. Bradford said that Dr. Galuardi had told her that Dr. Zaky Salama had committed Medicare fraud and was no longer practicing. *Id.* at ¶¶ 42, 46. Dr. Galuardi's statement to Ms. Bradford was made "between October 4, 2024, and November 15, 2024." *Id.* at ¶ 42. On or about April 1, 2025, Paula Cirnigliaro, a former KNJ patient, went to Dr. Zaky Salama's office "to determine if [he] could treat her" and informed him that Dr. Galuardi had told her during a prior visit that Dr. Zaky Salama had committed Medicare fraud and was no longer practicing. *Id.* at ¶ 60.

Dr. Galuardi knowingly and deliberately made the statements with actual malice or he negligently failed to ascertain the falsity of the statements. *Id.* at ¶¶ 18, 22, 34, 38, 49, 55, 63, 66. The statements that "accused" Dr. Zaky Salama "of committing a crime . . . constitute[ ] slander *per se*" and were "not privileged." *Id.* at ¶¶ 16, 21, 31, 33, 37, 48, 53, 62, 65. As a result of the publication of these statements, Dr. Zaky Salama's character and reputation were harmed, and he suffered mental anguish, personal humiliation, and economic and non-economic damages. *Id.* at ¶¶ 23, 39, 54, 68. For each of the four counts, Dr. Zaky Salama seeks one million dollars in compensatory damages, as well as three million dollars in punitive damages, attorney's fees, costs, and expenses. *Id.* at 4, 6, 9–10.

## II. DISCUSSION

Dr. Galuardi seeks dismissal pursuant to Federal Rules of Civil Procedure 12(b)(6) on the grounds that Dr. Zaky Salama's amended allegations fail to state a claim.[3] ECF No. 26-1 at 10–12. Dr. Zaky Salama argues the opposite. ECF No. 29-1 at 8–14. Following discussion of the applicable standard of review, the sufficiency of the amended pleading is addressed below.

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard is designed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). A complaint does not need "detailed factual allegations" to satisfy the Rule 8(a)(2) pleading standard, but it must have "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* To survive a motion to dismiss, a complaint must have "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard falls somewhere in between "probability,"

[3] Alternatively, Defendant Christopher J. Galuardi, MD, argues that he is entitled to judgment as a matter of law because Plaintiff Wadid Youssef Zaky Salama, MD "cannot prove falsity, and, truth is an absolute defense to defamation." ECF No. 26-1 at 13. Dr. Galuardi also asks the Court to strike paragraph 7 of the amended complaint pursuant to Federal Rule of Civil Procedure 12(f) "because it is immaterial, impertinent, and scandalous." *Id.* at 16. Because the undersigned concludes that Dr. Zaky Salama has failed to plausibly allege claims upon which relief may be granted, *see* II.B., *infra*, it is unnecessary to reach Dr. Galuardi's additional arguments.

which is not required, and "sheer possibility," which is insufficient. *Id.*; *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

When evaluating a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw reasonable inferences from the facts in favor of the plaintiff to determine if the plaintiff is entitled to the relief sought. *Iqbal*, 556 U.S. at 678. The same does not hold true for legal conclusions. *Id.*; *Twombly*, 550 U.S. at 555-556. Thus, "a plaintiff armed with nothing more than conclusions" has not satisfied the Rule 12(b)(6) standard. *Iqbal*, 556 U.S. at 678-679. Ultimately, a court determines if the pleading standard has been met "by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the complaint states a claim. *A Soc'y Without a Name* v. *Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (internal quotation marks and citations omitted).

**B. Dr. Zaky Salama's Amended Complaint**

In an action brought under a federal court's diversity jurisdiction, the court is to apply the substantive law of the state in which it sits. *Mathis* v. *Terra Renewal Servs. Inc.*, 69 F.4th 236, 242 (4th Cir. 2023); *Lewis* v. *Waletzky*, 422 Md. 647, 657 (2011). The required elements of a defamation claim under Maryland law are that "(1) the defendant made a defamatory statement to a third person (a requirement known as publication); (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm." *Doe* v. *Johns Hopkins Health Sys. Corp.,* 274 F. Supp. 3d 355, 365 (D. Md. 2017) (citing *Gohari* v. *Darvish*, 363 Md. 42, 54 (2001)).

As to the first element, "[a] defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person." *Batson* v. *Shiflett*,

325 Md. 684, 722-723 (1992) (citation omitted). Moreover, the publication to a third party must be unprivileged. *Harvey* v. *Cable News Network, Inc.*, 48 F.4th 257, 269 (4th Cir. 2022). "Under the second element, a 'false' statement is one 'that is not substantially correct.'" *Piscatelli* v. *Van Smith*, 424 Md. 294, 306 (2012) (quoting *Batson*, 325 Md. at 726). For the third element, "a plaintiff must show that the party making the allegedly false defamatory statement acted with 'either negligence or actual malice.'" *Jones* v. *Blair Wellness Ctr., LLC*, Civil Action No. ADC-21-2606, 2023 WL 4352451, at *14 (D. Md. June 30, 2023) (quoting *Samuels* v. *Tschechtelin*, 135 Md. App. 483, 544 (2000)). The fourth element requires "actual harm," except that "in cases in which the statement was defamatory *per se* and was made with actual malice, harm may be presumed." *Doe*, 274 F. Supp. 3d at 366.

A defamation claim may be defeated by an absolute or qualified privilege. *Cullen* v. *Board of Educ. of Harford Cnty.*, No. 1413 Sept. Term 2017, 2018 WL 5279055, at *3, *6 (Md. Ct. Spec. App. Oct. 23, 2018). An absolute privilege, which applies to communications made in a legislative, judicial, or administrative proceeding, provides total immunity from liability for a claim of defamation. *Id.* at *3. A qualified privilege, which applies to four categories of communications, "is conditioned upon the absence of malice and is forfeited if it is abused." *Piscatelli* v. *Van Smith*, 424 Md. 294, 307 (2012) (internal quotation marks and citation omitted); *see also Gohari* v. *Darvish*, 363 Md. 42, 57 (2001) (identifying the four common law qualified privileges). One such qualified privilege—known as the common interest privilege—permits publication of an allegedly defamatory remark "to someone who shares a common interest." *Id.*; *see also Cullen*, 2018 WL 5279055, at *6 ("A common interest privilege applies when two parties share a mutual interest and the publication of statements advances or protects their mutual interest."). "The privilege recognizes the broader public value in 'promot[ing] free exchange of relevant information among those engaged in a common enterprise or activity and to permit them

to make appropriate internal communications and share consultations without fear of suit.'" *Shirley* v. *Heckman*, 214 Md. App. 34, 43 (2013) (alteration in original) (quoting *Gohari*, 363 Md. at 58). A common interest "may include interests in property, business and professional dealings, and can inhere in business dealings between the publisher and the recipient." *Gohari*, 363 Md. at 58 (internal quotation marks and citations omitted). "There is no rigid definition of 'common interest.'" *Shirley*, 214 Md. App. at 43.

As relevant here, Maryland Courts have found the common interest privilege applicable to communications where an employer explained to employees why another employee had been fired. *Happy 40, Inc.* v. *Miller*, 63 Md. App. 24, 35 (1985); *see also Montgomery Investigative Servs., Ltd.* v. *Horne*, 173 Md. App. 193, 205 (2007) (collecting cases where an employer's statements about a former employee's theft and termination were found to be qualifiedly privileged); *McDermott* v. *Hughley*, 317 Md. 12, 28-29 (1989) (same). Such a disclosure prevents the employer from "appearing arbitrary and capricious." *Happy 40, Inc.*, 63 Md. App. at 36. Further, where the employer does not use the communication as an opportunity to "abuse and vilify" the former employee and instead made the disclosure "in order to protect [ ] lawful interests," there is no abuse of the privilege. *Id.* (internal citation and quotation marks omitted).

Here, Dr. Galuardi's statements to two KNJ employees, as alleged in Counts I and II, fit squarely within this privilege because they explained Dr. Zaky Salama's status with KNJ and advanced the common interest of individuals working at the same medical practice. In the Amended Complaint, Dr. Zaky Salama summarily asserts that these communications were "not privileged." ECF No. 23 ¶¶ 21, 37. Yet, as the Court noted previously, "legal conclusions . . . are 'not entitled to the presumption of truth.'" *Salama*, 2026 WL 1279070, at *3 (quoting *Pizarro Orta* v. *Creekstone Landscaping & Excavating, LLC*, Civil Action No. EA-23-1954, 2024 WL 3555093, at *5 (D. Md. July 25, 2024)). Dr. Zaky Salama does not allege in the

Amended Complaint or argue in opposition that Dr. Galuardi abused the qualified privilege nor do the allegations support such a conclusion. ECF Nos. 23, 29-1. To the contrary, Dr. Galuardi explained Dr. Zaky Salama's employment status to current employees upon their arrival at work and realization that their passcode was no longer valid. *See* I., *supra*. The conversations with the two KNJ employees—which are alleged to have occurred outside the presence of non-employees—are protected by a qualified privilege.[4] ECF No. 23 ¶¶ 14–15, 30.

Counts III and IV of the Amended Complaint suffer from the same fundamental flaw present in the original complaint. *Salama*, 2026 WL 1279070, at *3. The allegations broadly refer to communications made to Ms. Bradford and Ms. Cirnigliaro but lack sufficient factual detail to render the claims plausible, as opposed to merely possible. *Iqbal*, 556 U.S. at 678. A defamation claim "must include enough details to make it plausible that the claimant is entitled to relief," *Total Recon Auto Ctr., LLC* v. *Allstate Ins. Co.*, 705 F. Supp. 3d 510, 526 (D. Md. 2023), and "to enable a defendant to appropriately respond," *Estate of Jones* v. *St. Thomas More Nursing & Rehab Ctr.*, Civil Action No. PJM 09-1419, 2009 WL 3247929, at *3 (D. Md. Oct. 1, 2009). In each of these counts, Dr. Zaky Salama fails to state with specificity when Dr. Galuardi made the statement; where Dr. Galuardi and Ms. Bradford or Ms. Cirnigliano were at the time the statement was made; or the circumstances in which the statement was made, such as whether it occurred during medical appointment, a business discussion, a casual conversation, or in some other context. Further, with respect to Ms. Bradford, Dr. Zaky Salama states only that it occurred

[4] Applying Maryland law, this Court has also found the common interest privilege applicable to medical practitioners and their patients. *E.g.*, *Horton* v. *Cullen*, Civil Action No. GLS-22-2951, 2024 WL 4169976, at *11 (D. Md. Sept. 12, 2024) (mental health counselor and minor client's stepmother); *Nath* v. *Belzberg*, Civil Action No. WDQ-06-3454, 2007 WL 9643367, at *4 (D. Md. July 13, 2007) (medical doctor and patients). It stands to reason that Dr. Galuardi's communications to KNJ patients, as alleged in Counts III and IV, are also protected by the common interest privilege. It is unnecessary to decide that question because those counts fail to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

sometime "within the last few weeks" leading up to November 15, 2024. ECF No. 23 ¶ 45. Dr. Zaky Salama provides an even vaguer account of the alleged conversation with Ms. Cirnigliaro, averring only that it occurred "prior to" her April 1, 2025 visit with Dr. Zaky Salama. *Id.* at ¶ 60. These allegations are insufficient to state a plausible claim. *Brown* v. *Ferguson Enters., Inc.*, Civil Action No. CCB-12-1817, 2012 WL 6185310, at *3 (D. Md. Dec. 11, 2012) (allegations cannot support a claim for defamation where there are "no specific description of the content of the alleged statements, nor when and how they were communicated."); *Grewe* v. *Amerifleet Transp., Inc.*, Civil Action No. WDQ-08-2765, 2009 WL 10727162, at *4 (D. Md. Jan. 5, 2009) (a defamation pleading must allege "the time and place in which [statements] were made").

Finally, it is unclear whether Dr. Zaky Salama claims that Dr. Galuardi defamed him solely by stating that he committed Medicare fraud or by also stating that he was "removed from the practice," "no longer with the practice," or "not practicing anymore." ECF No. 23 ¶¶ 15, 30, 46, 60. Dr. Zaky Salama does not plead that the statements were false at the time they were made, nor does he provide his dates of employment with KNJ or Jessco, LLC. Moreover, Dr. Zaky Salama does not allege that these statements were defamatory *per se* or that he suffered any harm as a result. Dr. Zaky Salama's "[c]onclusory and formulaic assertions" that "merely recite the legal standard for defamation without alleging facts" are therefore insufficient to support a claim for relief. *Rose* v. *Unplugged Sport Bar & Restaurant, Inc.*, Civil Action No. MJM-25-521, 2026 WL 850523, at *8 (D. Md. Mar. 27, 2026).

## III. CONCLUSION

For the foregoing reasons, Dr. Galuardi's motion (ECF No. 26), construed as a motion to dismiss, is granted. A separate Order follows.

Date: November 4, 2026

/s/
Erin Aslan
United States Magistrate Judge